IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Walter Ray Beasley,**           ) | |
|     **Plaintiff,**            ) | |
|                           ) | |
| **v.**                       ) | No. 1:23cv782 (RDA/WEF) |
|                           ) | |
| **T. Peyton, et al.,**        ) | |
|     **Defendants.**            ) | |

MEMORANDUM OPINION

Walter Ray Beasley ("Beasley" or "Plaintiff"), a Virginia inmate, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on June 14, 2023, alleging thirteen individual defendants violated his First Amendment right to free exercise of his religion, and his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") while he was in custody at the Riverside Regional Jail ("RRJ"). Dkt. No. 1.[1] The complaint was screened pursuant to 28 U.S.C.§ 1915b, deficiencies were noted, and Beasley was given leave to amend his complaint. Dkt. No. 11. Beasley filed his first amended complaint ("FAC") on January 24, 2025, naming one defendant, Mrs. T. Peyton, Kitchen Supervisor.[2] On June 16, 2025, Defendant Peyton filed a motion to dismiss, with a brief in support. Dkt. No. 42.[3] On October 1, 2025, the Court advised Plaintiff of his rights under *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), to file a response to the motion to dismiss.

---

[1] Plaintiff was transferred to the Baskerville Correctional Center on or about December 14, 2023, Dkt. No. 8 at 1, and released from custody on or about June 26, 2025. Dkt. No. 42.

[2] Because Beasley only named Peyton as a defendant in the FAC, the remaining defendants were dismissed on January 30, 2025. Dkt. No. 28 at 1, n.1. In addition, Defendant Peyton has sought leave to file to file an Answer, Affirmative Defenses, and Responsive Pleading due to issues with notification via PACER. Dkt. Nos. 38, 39. Plaintiff has not objected or opposed Defendant Peyton's motion. For good cause shown, leave is granted and Defendant Peyton's Answer, Affirmation Defenses, and Motion to Dismiss are deemed timely filed.

[3] Defendant Peyton also filed a motion pursuant to Federal Rule of Procedure Rule 6(b)(1)(b), Dkt. Nos. 38, 39, seeking leave to file his Answer, Affirmative Defenses, and Motion to Dismiss out of time due to technical issues with the ECF filing system. For good cause shown, Defendant Peyton's pleadings are deemed timely filed.

Dkt. No. 48. The time for filing a response has passed and Plaintiff has not responded. The matter is now ripe for disposition, and for the reasons that follow, Defendant's motions to dismiss must be granted, and this matter dismissed with prejudice.

### I. Standard of Review

Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Sumner v. Tucker*, 9 F. Supp.2d 641, 642 (E.D. Va. 1998). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990) (a pleading must be presented "with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of the pleader's claims "without untoward effort"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

Where a complaint is filed by a prisoner acting *pro se*, however, that complaint must be construed liberally regardless of how unskillfully it is pleaded. *Haines v. Kerner*, 404 U.S. 519

(1972). A *pro se* litigant is therefore not held to the strict pleading requirements demanded of attorneys. *Estelle v. Gamble*, 429 U.S. 97, 106-07 (1976); *see also Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) ("This Court reads *pro se* pleadings to raise the strongest arguments that they suggest, and we consider whether a *pro se* civil rights plaintiff is entitled to relief under any legal theory that his factual allegations might plausibly convey.").

## II. FAC

Beasley alleges in his FAC that Defendant Peyton violated his due process rights, First Amendment right to freedom of religion, and his rights under the RLUIPA. Beasley seeks only monetary relief. Dkt. No. 27 at 4, 5. Beasley alleges that Defendant Peyton "failed to accommodate . . . his request for a special diet during Ramadan from March 23, 2023 through April 20, 2023," which violated his First Amendment rights and his rights under the RLUIPA. *Id.* at 4. The meals Beasley was served were not the correct "Ramdan meals for Moorish Science members." *Id.* An attachment to the FAC lists the meals that Beasley alleges were provided to him from March 23, 2023, through April 20, 2023. Dkt. No. 27–1.

## III. Analysis

Defendant Peyton's motion to dismiss sets forth several grounds to dismiss the FAC. For purposes of the motion, the Court will assume that Plaintiff is an adherent to the Moorish Science Temple of America ("MSTA") and that his belief in MSTA is sincere. After examining the FAC, and the motion to dismiss, it is evident that Beasley has failed to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (a district "court shall dismiss [a] case at any time" if the action "fails to state a claim on which relief may be granted"); *see, e.g., Meredith v. Deeds*, 643 F. App'x 305, 305 (4th Cir. 2016) (affirming district court's dismissal pursuant to § 1915(e)(2)(B)(ii) because the plaintiffs failed to allege that defendants "were state actors or provide any other legal basis for his suit").

*A. Due Process*

To succeed on a due process claim, a plaintiff must demonstrate that he possessed "a constitutionally cognizable life, liberty, or property interest." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013). Beasley's allegation that his due process rights were violated is conclusory. A court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), and "[t]he presence []of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint" do not support the legal conclusion. *Cook v. Kraft Foods Global, Inc.*, 184 F. App'x 348, 349 (4th Cir. 2006) (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) (dismissing Fourteenth Amendment claims where complaint alleged deliberate indifference but included no facts to support allegation)).[4]

The only allegation that Beasley had suffered a due process violation in his original complaint is in the context of RRJ officials not adhering to their own regulations in the grievance process. *See* Dkt. 1–4 (dated April 19, 2023, "I'm writing this grievance under due process do to the fact that my informal complaint wasn't returned on the correct date as provided.").[5] The Fourth Circuit has held that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017); *see Adams*

---

[4] *See, e.g., Williams v. Merritt*, 469 F. App'x 270, 270 * (4th Cir. 2012) (affirming district court's dismissal of a claim "on the ground that [plaintiff–appellant] failed to offer any evidence, apart from his own bald and conclusory allegations, to support his claims") (citing *Erwin v. United States*, 591 F.3d 313, 319–20 (4th Cir. 2010) (noting that mere conclusory allegations are insufficient to support the nonmoving party's case)); *Simpson v. Welch*, 900 F.2d 33, 35 (4th Cir. 1990). ("conclusory allegations of discrimination and harassment do not state a claim upon which relief can be granted.").

[5] Two other documents attached to the original complaint contain identical language. *See* Dkt. No. 1–6 (dated April 19, 2023, "I'm writing this grievance under due process do to the fact that my informal complaint wasn't returned on the correct date as provided."); Dkt. No. 1–8 (April 21, 2023, Inmate Grievance Form, "I'm writing this grievance under due process do to the fact that my informal complaint wasn't returned on the correct date as provided.").

*v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). *Doans v. Rice*, No. 87-7244, 1987 WL 38813, at *1 (4th Cir. Oct. 15, 1987) ("Because inmate grievance procedures are not constitutionally required in state prison systems, the failure to follow grievance procedures does not give rise to a § 1983 claim."); *see also Garraghty v. Com. of Va., Dep't of Corr.*, 52 F.3d 1274, 1285 (4th Cir. 1995) ("the mere fact that a state agency violates its own procedures does not ipso facto mean that it has contravened federal due process requirements"); *Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that "state-created procedures' do not define the standard for due process). In sum, even if the documents that Beasley attached to his original complaint, he has failed to state a claim upon which relief could be granted. Accordingly, the motion will be granted in this regard.

### B. RLUIPA

The "only potential remedies under RLUIPA are equitable." *Wall v. Wade*, 741 F.3d 492, 496 n.5 (4th Cir. 2014). A prisoner bringing a cause of action under the RLUIPA is not entitled to monetary damages against state defendants in either their individual or official capacities. *Sossamon v. Texas*, 563 U.S. 277, 293 (2011) (prohibiting damages claims against state officials in their official capacity); *Randleman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009) (same for individual capacity). Here, Beasley's amended complaint only seeks monetary damages. Dkt. No. 27 at 5 "$1.5 million"). Additionally, Beasley was transferred to the VDOC on February 6, 2025. Dkt. No. 29. The transfer renders Beasley's RLUIPA claim moot. *See Firewalker-Fields v. Lee*, 58 F.4th 104, 113-14 (4th Cir. 2023) (noting district court properly dismissed a RLUIPA claim because the inmate had been transferred from the regional jail to "the Virginia Department of Corrections" rendering "any injunctive relief and therefore any claim under RLUIPA" as "moot.")

(citing *Wall*, 741 F.3d at 496 n.5; *Rendelman v. Rouse*, 569 F.3d 182, 186-87 (4th Cir. 2009); *Mo. Kan. & Tex. Ry. v. Ferris*, 179 U.S. 602, 606 ("Moot questions require no answer.")). Accordingly, Beasley's RLUIPA claim will be dismissed as moot.

### C. *First Amendment Free Exercise*

The elements of a Free exercise claim are that a plaintiff hold a "sincere religious belief and (2) that his religious practice has been substantially burdened by the prison policy or practice." *Greenhill v. Clarke*, 944 F.3d 243, 253 (4th Cir. 2019); *see also Firewalker-Fields*, 58 F.4th at 114 ("To make a Free Exercise claim, a prisoner must first show, as a threshold matter, that a prison practice or regulation violates his Free Exercise rights before showing that the prison's policies are not 'reasonably related to legitimate penological interests.'") (quoting *Ali v. Dixon*, 912 F.2d 86, 89 (4th Cir. 1990) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). A substantial burden either puts pressure on a person to change his religious beliefs or puts that person to a choice between abandoning his religion or following his beliefs and losing some government benefit. *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006). Importantly, Beasley must also establish causation. *Wright v. Lassiter*, 921 F.3d 413, 419 (4th Cir. 2019) ("We have expressly held that § 1983 incorporates a causation requirement. And RLUIPA's text does as well.") (citing *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012)). If causation is lacking, then a "§ 1983 case fails as a matter of law." *Dixon v. Burke Cnty., Ga.*, 303 F.3d 1271, 1275 (11th Cir. 2002).

Official Capacity. To the extent that Beasley is raising an official capacity claim against Defendant Peyton, the claim has no merit.[6] Beasley alleges an injury to a constitutional right, but he does not explain how any RRJ policy, omission, or practice caused the harm, and without such

---

[6] *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . . It is not a suit against the official personally, for the real party in interest is the entity.").

a nexus "no liability can attach to" RRJ. *Wells v. Fuentes*, 126 F.4th 882, 897 (4th Cir. 2025) (citing *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003)).

> [N]ot every deprivation of a constitutional right will lead to municipal liability. Only in cases where the municipality causes the deprivation "through an official policy or custom" will liability attach. *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999).
>
> A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest [s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law." *Id.* at 217 (internal citations omitted).

*Lytle*, 326 F.3d at 471.

Here, Beasley alleges that Defendant Peyton "failed to accommodate his religious-based request for a special diet during Ramadan from March 20, 2023 through April 20, 2023." Dkt. No. 27 at 4. Beasley attached a two-page list to his FAC, which he alleges are the meals he was served from March 20, 2023, through April 20, 2023. Dkt. No. 27-1. Beasley, however, does not allege why each meal "wasn't the right meals for the Ramadan meals for Moorish Science members." Dkt. No. 27 at 4. The only criticism of the meals is the statement at the top of the list, "All meals were cold meals." Dkt. No. 27-1 at 1. A correctional facility does not violate the Free Exercise Clause by offering an all-cold religious-based diet. *Johnson v. Horn*, 150 F.3d 276, 283 (3d Cir. 1998), *overruled on other grounds by DeHart v. Horn*, 227 F.3d 47, 55 (3d Cir. 2000).[7] Accordingly, the motion will be granted in this regard.

---

[7] *Johnson* held that "[i]f the cold kosher diet currently being provided satisfies kosher requirements, then the hot kosher diet which the Inmates suggest does not accommodate the Inmates any more 'fully;' it merely accommodates them in a more palatable manner. Taste, however, is not a relevant constitutional consideration." *Id.* See also *Brown-El v. Delo*, 969 F.2d 644, 648 (8th Cir. 1992) (finding frivolous prisoner's claim that his constitutional rights were violated when he was served cold food); *cf. Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (concluding that inmates possessed no liberty interest in avoiding conditions of confinement for six months that included being served "cold" food "in considerably smaller portions" than those served to inmates in general population); *Couch v. Jabe*, 479 F. Supp. 2d 569, 585 (W.D. Va. 2006) (finding that serving "exclusively cold meals"

Supervisory Liability. To the extent that Beasley is asserting Defendant Peyton is liable for him not receiving the correct Ramdan meals because she was the Kitchen Supervisor, he has also failed to state a claim. To be sure, although Beasley alleged in his FAC that Defendant Peyton was RRJ's Kitchen Supervisor, he does not allege any specific actions by Defendant Peyton with regard to the alleged First Amendment violation. "[A] supervisor may only be held liable where (1) he knew that his subordinate 'was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury'; (2) his response showed 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) that there was an 'affirmative causal link' between his inaction and the constitutional injury." *King v. Rubenstein*, 825 F.3d 206, 224 (4th Cir. 2016) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Beasley's FAC is devoid of any allegations that would establish these necessary elements, and therefore Defendant Peyton is not liable for the alleged First Amendment Free Exercise claim based upon her position as the Kitchen Supervisor.

Likewise, to establish that Defendant Peyton is liable in her personal capacity, Beasley

> must "affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotation marks omitted). That is, the official's "own individual actions" must have "violated the Constitution." *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Importantly, mere knowledge of such a deprivation does not suffice. *Wright*, 766 F.2d at 850.

*Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018). At best, Beasley's allegations establish Defendant Peyton was involved in the grievance process and had "mere knowledge" of the deprivation.[8] "Liability will only lie where it is affirmatively shown that the official charged acted

---

to inmates during Ramadan "did not substantially burden the free exercise of [plaintiff's] religion").

[8] Beasley filed an informal complaint on March 23, 2023, and indicated in his subsequent grievance that he had tried to resolve his complaint with Defendant Peyton on March 23, 2023, via the informal complaint which was not filed until 7:00 p.m. on March 23, 2023 (after dinner time). Dkt. No. 1–3. Beasley's informal complaint alleged that he was not receiving the right "Ramdan meal," that as a MSTA he ate a different meal than Sunni Muslims and

personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Consequently, "[o]nly persons who cause or participate in the violations are responsible . . . . Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (citations omitted); *see Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("the alleged mishandling of . . . grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim"); *Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012) ("The 'denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.'") (citation omitted)); *cf. Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (holding prisoner had no claim for "failure to investigate" a grievance because there was no "protected liberty interest" in having a grievance "resolved to his satisfaction"). Accordingly, the motion will be granted in this regard.

Personal Capacity. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 556 U.S. at 676. For personal liability, "'it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.'" *King v. Rubenstein*, 825 F.3d 206, 223 (4th Cir. 2016) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). An individual capacity § 1983 suit requires proof of "direct culpability in causing the injury" inflicted. *McWilliams v. Fairfax Cnty. Bd. of Supervisors*, 72 F.3d 1191, 1197 (4th Cir. 1996) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978)), *overruled on other*

---

Nation of Islam adherents, that he was supposed to also receive "a bag lunch at dinner time," and that the portions he was receiving did not "add up to 2000 calories" per day. Defendant Peyton responded that Beasley was "receiving the meal plan for Ramdan which includes a bag [lunch at dinner time]" and that the portions actually added up to 2900 calories per day. Dkt. No. 1–2. There is no further indication that Defendant Peyton was informed that Beasley had any issue with the meals during the remainder of Ramdan, and Beasley did not file his grievance until after Ramadan had ended on April 20, 2023. The grievance did not get to Defendant Peyton until May 1, 2023. Dkt. No. 1–3.

*grounds by Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998); *see, e.g., Octave v. Wade*, No. 3:16-cv-00338, 2017 WL 465467, at *3 (E.D. Va. Feb. 3, 2017) ("Liability under 42 U.S.C. § 1983 . . . requires individual involvement in the constitutional wrongs alleged in the complaint . . . . [T]he culpability of one government official does not infect his or her colleagues by osmosis. Rather, a plaintiff must show some constitutionally wrongful action by each defendant he sues.") (citation omitted).

Beasley's FAC, at best, alleges Defendant Peyton allegedly violated his Free Exercise rights because she responded to his informal complaint and the grievance he filed after Ramdan was over. *See, supra* at 8-9. Beasley has not stated a claim establishing personal involvement by Defendant Peyton. The FAC will be dismissed and the motion will be granted.

### IV. Conclusion

For the reasons outlined above, Defendant Peyton's motions for leave to file an Answer, Affirmative Defenses, and Responsive Pleading, Dkt. Nos. 38, 39, are granted and her pleadings are deemed timely filed; and Defendant Peyton's motion to dismiss, Dkt. No. 42 and 25, will be granted, through an Order that will be issued alongside this Memorandum Opinion.

Entered this __3d__ day of __February__ 2025.

Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge